IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TRACY MOTELEWSKI, | ) | CV. No. 11-00778 BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART |
| | ) | AND DENYING IN PART |
| vs. | ) | PLAINTIFF'S AND |
| | ) | DEFENDANT'S MOTIONS FOR |
| MAUI POLICE DEPARTMENT, et | ) | SUMMARY JUDGMENT |
| al. | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AND
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

Before the Court is Defendant County of Maui's ("the County")

Motion for Summary Judgment (Doc. # 34), and Plaintiff Tracy Motelewski's

Motion for Partial Summary Judgment (Doc. # 45). After careful consideration of

the motions, the supporting and opposing memoranda, the attached documentation,

and the arguments of counsel, the Court grants both motions in part.

BACKGROUND

The following facts are not disputed. On August 18, 2008, Plaintiff

was in a parked vehicle when three County police officers approached. (Pl.'s Mot.

For Summ. J. ("MSJ") Ex. 1, at 9-12.) Officers Steven Gunderson ("Gunderson")

and Kristopher Galon ("Galon") were on duty when they approached. (Gunderson

1

Decl. at ¶ 3; Galon's Answer to FAC, Doc. # 23, at ¶ 10.)  Gunderson did not have a warrant to search Plaintiff's car, and threatened to impound her car if she did not consent to his search.  (Pl.'s MSJ Exs. 2, 6)  Gunderson, Galon, and another officer searched Plaintiff's car without probable cause and recovered a bag belonging to Plaintiff's male passenger.  (Gunderson Decl. at ¶¶ 5, 8; Pl.'s MSJ Ex. 2 at 2.)  Gunderson confiscated a white powdery substance, $500 from Plaintiff's purse, and pipes.  (Gunderson Decl. at ¶ 6, Gunderson's Answer to FAC at ¶ 9.)  Plaintiff was arrested and detained overnight at the police station.  (Pl.'s MSJ Ex. 1 at 10-11.)

Plaintiff was released from custody the next morning and started walking home.  (Id. at 11.)  Galon, who was on-duty, approached Plaintiff in a police car with flashing lights and offered her a ride.  (Id.)  Galon was not authorized to transport Plaintiff without permission from his supervisor.  (Decl. of Gary Yabuta ¶ 11, Doc. # 35-2.)  He was also required to provide dispatch with the vehicle's mileage and destination prior to transporting Plaintiff.  (Id. at ¶ 12.)  Galon did not request authorization to transport Plaintiff or contact dispatch with the mileage of his vehicle.  (Id. at ¶ 13.)

Plaintiff entered the car, and Galon coerced her into non-consensual sexual behavior.  (Pl.'s MSJ Ex. 1 at 12.)  Plaintiff reported the incident to the

2

Maui Police Department ("MPD").  After investigation, Galon and Gunderson were terminated from employment at the MPD, and Galon pled guilty in federal district court to sexually assaulting Plaintiff.  (Pl.'s MSJ Exs. 4 & 5; Gunderson Decl. at ¶ 10.)  Gunderson pled guilty to second degree theft and tampering with physical evidence.  (Gunderson Decl. at ¶ 10.)

Plaintiff's First Amended Complaint asserts the following claims against the County: 1) negligent supervision; 2) negligent training; 3) respondeat superior; 4) gross negligence; and 5) violations of 42 U.S.C. § 1983.  (Doc. # 1 Ex. 1 at 8-13.)  The County's motion for summary judgment asserts that: 1) Plaintiff's § 1983 claims fail because Plaintiff has no evidence of custom or inadequate training and supervision; 2) Plaintiff's respondeat superior claim fails because Gunderson and Galon's actions were outside the scope of employment; and 3) Plaintiff's negligent supervision and training claims fail for lack of proof.  (Doc. # 34.)  Plaintiff's motion for summary judgment asserts that, as a matter of law, the actions of Galon and Gunderson occurred within the scope of employment because her illegal arrest "set the stage" for her sexual assault.  (Doc. # 45.)

As discussed below, the Court grants both motions in part. Specifically, the Court: 1) grants Plaintiff's request for additional discovery under Federal Rule of Civil Procedure ("FRCP") Rule 56 for her negligent training and supervision claims; 2) grants the County's motion regarding Plaintiff's § 1983 claim regarding municipal custom; and 3) grants both motions in part with respect to Plaintiff's respondeat superior claim.

## STANDARD OF REVIEW

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact, and that the undisputed facts warrant judgment for the moving party as a matter of law.  See Fed. R. Civ. P. 56(a).  In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1228 (9th Cir. 2000).

In deciding a motion for summary judgment, the court's function is not to try issues of fact, but rather, it is only to determine whether there are issues to be tried.  Anderson, 477 U.S. at 249.  If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a

material issue of fact, summary judgment is improper.  See T.W. Elec. Serv., Inc.

v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir.1987).

DISCUSSION

I.    The Court Grants the County's Motion With Respect To Plaintiff's § 1983
      Claim Regarding Municipal Practice and Custom.

        Plaintiff's First Amended Complaint alleges that the County violated

42 U.S.C. § 1983 by instituting or allowing the existence of a pattern of equal

protection violations, unreasonable searches and seizures, false arrests, and sexual

misconduct by County police officers.  (Doc. # 1 Ex. A at 15.)  The County asserts

that summary judgement is appropriate because: 1) Plaintiff has not shown

evidence of longstanding practice or custom; 2) Plaintiff cannot establish

proximate causation; and 3) Plaintiff's equal protection claim fails.  (Doc. # 34 at

7-18.)  In response, Plaintiff asserts that the County's motion is premature and that

the facts produced thus far show a custom and practice of illicit behavior by MPD

officers.  (Doc. # 67 at 4.)  The Court concludes that Plaintiff has not shown a

custom or practice of unreasonable searches, equal protection violations, or sexual

assaults.

        Under § 1983, "Every person who, under color of any statute,

ordinance, regulation, custom, or usage, . . . subjects, or causes to be subjected, any

citizen of the United States . . . to the deprivation of any rights, privileges, or

5

immunities secured by the Constitution and laws, shall be liable to the party injured

in an action at law. . . ."  The "Supreme Court has held that municipalities may be

held liable as 'persons' under § 1983 'when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly

be said to represent official policy, inflicts the injury.'"  <u>Price v. Sery</u>, 513 F.3d

962, 966 (9th Cir. 2008) (quoting <u>Monell</u>, 436 U.S. at 694).  "A plaintiff may also

establish municipal liability by demonstrating that (1) <u>the constitutional tort was</u>

<u>the result of a 'longstanding practice or custom which constitutes the standard</u>

<u>operating procedure of the local government entity</u>;' (2) the tortfeasor was an

official whose acts fairly represent official policy such that the challenged action

constituted official policy; or (3) an official with final policy-making authority

'delegated that authority to, or ratified the decision of, a subordinate.'"  <u>Id.</u> (quoting

<u>Ulrich v. City & County of San Francisco</u>, 308 F.3d 968, 984–85 (9th Cir. 2002))

(emphasis added).

      Plaintiff does not assert that the County has an official policy of

allowing unconstitutional searches, or that an individual with final policy-making

authority ratified the officers' actions.  Thus, Plaintiff's claim requires proof that

the officers' actions resulted from longstanding practice or custom.  The "custom

must be so 'persistent and widespread' that it constitutes a 'permanent and well

settled city policy.'"  Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) (quoting

Monell v. Dept. of Soc. Serv. of N.Y., 436 U.S. 658, 691 (1978)).  "Liability for

improper custom may not be predicated on isolated or sporadic incidents; it must

be founded upon practices of sufficient duration, frequency and consistency that

the conduct has become a traditional method of carrying out policy."  Id.  Whether

custom exists is a typically a jury question, but when there are no genuine issues of

material fact, disposition by summary judgment is appropriate.  Id.

Outside of the underlying incident, Plaintiff has produced the

following evidence: 1) a MPD officer was sentenced to a five-year prison term in

June 2005 for trying to extort sexual favors after a traffic stop; 2) Galon stole

money from a person at a traffic stop in November 2007; 3) a MPD Officer was

charged in March 2011 with first degree sexual assault; and 4) a MPD officer was

arrested for third degree sexual assault of a minor in May 2012.  (Pl's Op. To

County's MSJ, Exs. 5, 6, 7; Yabuta Decl. at ¶ 18; Pl.'s MSJ, Ex. 5.)

The Court concludes that Plaintiff has not adduced sufficient evidence

of a practice or custom of inappropriate behavior because the incidents are not

widespread.  Two of the incidents occurred over two years after the conduct giving

rise to this case.  Viewing the evidence produced in the light most favorable to the

Plaintiff, the Court concludes that five incidents occurring over the span of nearly

seven years does not indicate that the County has a practice or custom of sexual abuse, equal protection violations, or inappropriate behavior.

II.    The Court Grants the Plaintiff's Request For More Discovery Under FRCP Rule 56(d) With Respect To Her Claims Regarding Negligent Training and Supervision.

Plaintiff asserts § 1983 claims based on negligent training and supervision, and stand-alone claims based on the same conduct.  The Court concludes that it is premature to decide these issues because discovery is on-going. The parties scheduled depositions of Sergeant William Hankins, the supervisor on duty when the incident took place, and Sonny Waiohu, an officer present on the night of the incident.  Rule 56(d) allows the Court to defer considering a motion if a party shows that it cannot present facts essential to justify its position.  The depositions of Officer Hankins and Waiohu could produce evidence relevant to the negligent training and supervision claims.  The Court will decide issues relating to negligent supervision and training after the relevant depositions are completed.

III.    The Court Grants Plaintiff's and the County's Motions For Summary Judgment In Part With Respect to Respondeat Superior.

Plaintiff asserts that Galon and Gunderson were in the scope of employment when they committed sexual assault and theft, and that the County is liable for their actions.  The Court concludes that the sexual assault occurred outside the scope of employment, but that the circumstances surrounding the arrest

8

were within the scope of employment.  A jury question remains as to whether the

theft occurred within the scope of employment.

Hawaii courts follow the Restatement (Second) of Agency § 228.  <u>See</u>

<u>State v. Hoshijo ex rel. White</u>, 76 P.3d 550, 562 (Haw. 2003) (citing the

Restatement to define scope of authority).  Section 228 of the Restatement

provides that conduct of "a servant is within the scope of employment if, but only

if:

> (a) <u>it is of the kind he is employed to perform</u>;
> (b) it occurs substantially within the authorized time and space limits;
> (c) <u>it is actuated, at least in part, by a purpose to serve the master</u>, and
> (d) if force is intentionally used by the servant against another, the
> use of force is not unexpectable by the master."

(Emphasis added.)

Whether an employee was acting within the scope of his employment

is "ordinarily a question of fact to be determined in light of the evidence of the

particular case."  <u>Wong-Leong v. Hawaiian Independent Refinery, Inc.</u>, 879 P.2d

538, 546 (Haw. 1994) (citation omitted).  However, "where the facts are

susceptible of but one reasonable conclusion, the question may become a question

of law for the court." <u>Kang v. Charles Pankow Assocs.</u>, 675 P.2d 803, 808 (Haw. Ct. App. 1984).

    A.    <u>Sexual Assault</u>

        Based on the standard described above, the Court concludes that the sexual assault did not occur within the scope of employment.  Police officers are not employed to perform this type of conduct and it was not actuated in part to serve the employer.  <u>See</u> <u>Ho-Ching v. City and County of Honolulu</u>, Civ. No. 07-00237 DAE-KSC, 2009 WL 1227871, at *13 (D. Haw. Apr. 29, 2009) ("[E]ven if Moniz did commit a sexual assault or sexual harassment, it was not the conduct for which he was hired as a police office and by no means served the interests of Defendant."); <u>Sharples v. State</u>, 793 P.2d 175, 177 (Haw. 1990) (holding that state was not liable for psychiatrist's sex with patient under doctrine of respondeat superior).  Additionally, the sexual assault was not "related to the employment enterprise" because it bore no law enforcement purpose, and the County did not derive any benefit from the activity.

        The County also has a policy requiring a supervisor to authorize the transportation of civilians, and officers must contact dispatch with their vehicle's mileage prior to transporting a person of the opposite sex.  (Yabuta Decl. at ¶¶ 11, 12, Doc. # 35-2.)  On the day of the incident, officers at the police station informed

Plaintiff that they could not provide her with a ride, but would call a taxi for her. (Interview of Sonnie Waiohu, County's MSJ, Ex. L.)  Galon's breach of the County's policy bolsters the Court's conclusion that he was not acting within the scope of employment, and instead acted for purely personal reasons.

Plaintiff asserts that the arrest, which occurred within the scope of employment, "set the ball rolling" for the sexual assault and therefore the sexual assault occurred within the scope of employment.  (Doc. # 45 at 9.)  Plaintiff asserts that under Wong-Leong, "the applicable test is whether the employee's conduct was related to the employment enterprise or if the enterprise derived any benefit from the activity."  Wong-Leong, 879 P.2d at 546.  Plaintiff focuses on two factors outlined in that case:  "1) whether 'the enterprise of the employer would have benefitted by the context of the act of the employee but for the unfortunate injury'; and 2) 'whether the employer's risks are incident to [the] enterprise.'"  Id. (quoting Henderson, 819 P.2d at 89.)  Plaintiff asserts that the Wong-Leong test applies, rather than the Restatement.  (Doc. # 45 at 12 n.11.)

Plaintiff's argument fails because Hawaii courts apply the Restatement, which indicates that the sexual assault did not occur within the scope of employment.  In decisions after Wong-Leong, the Hawaii Supreme Court has applied the three-part Restatement test to analyze scope of employment.  See

11

Hoshijo ex rel. White, 76 P.3d at 563 (applying the Restatement to determine if conduct occurred within the scope of employment).

Furthermore, Wong-Leong explains the Restatement test rather than creating a separate contradictory test.  The two-part test cited by Plaintiff is similar to the Restatement because it concentrates on the benefit to the employer from the conduct.

Nevertheless, the factors in Wong-Leong indicate that Galon's sexual assault of Plaintiff did not occur within the scope of employment.  Plaintiff asserts that Galon carried out his function as a police officer and benefitted the County. (Doc. # 45 at 15.)  However, Galon expressly disobeyed MPD policy by transporting Plaintiff, and his sexual assault of Plaintiff, under no circumstances, could have benefitted the County or the MPD.

Relying on Lucas v. Liggett & Myers Tobacco Co., Plaintiff asserts that the County is liable for Galon's sexual assault because it placed him in a position to commit the sexual assault.  442 P.2d 460, 463 (Haw. 1968); (Doc. # 45 at 19.)  The Court concludes that Lucas is inapplicable because it deals with apparent authority rather than respondeat superior.  In Lucas, the Hawaii Supreme Court applied Restatement (Second) of Agency § 261, which provides that a "principal who puts a servant . . . in a position which enables the agent, while

12

apparently acting within his authority, to commit a fraud upon third persons is subject to liability to such third persons for the fraud." This provision does not relate to respondeat superior, and the Hawaii Supreme Court has analyzed respondeat superior on many occasions since <u>Lucas</u> without applying this principle. <u>See</u> <u>Hoshijo ex rel. White</u>, 76 P.3d at 563.

Finally, relying on <u>Wong-Leong</u>, Plaintiff asserts that Galon's sexual assault is a risk "incident to the enterprise" and was foreseeable to the County. (Doc. # 45 at 20-21.) The Court concludes that the sexual assault was not a foreseeable consequence of the officers' illegal arrest as a matter of law. It is not foreseeable that, as the result of an illegal arrest, an officer would disobey a policy regarding the transportation of civilians and commit sexual assault. Therefore, the Court concludes that the sexual assault occurred outside of the scope of employment.

B.    <u>Arrest</u>

The Court concludes that Plaintiff's arrest occurred during the scope of employment. Police officers are authorized to search vehicles and arrest people. The officers' search and arrest of Plaintiff occurred within the scope of employment because it was the type of conduct they were employed to perform,

occurred within authorized time and space limits, and was actuated in part by a purpose to serve the County.

C.   Theft

It is inappropriate to grant summary judgment in favor of either party regarding the theft, because it is unclear whether the theft was actuated in part to serve the County.  The theft of Plaintiff's personal belongings took place during authorized space and time constraints and the seizure of items is an activity that police officers are authorized to perform.

However, evidence in the record does not establish conclusively whether this specific seizure was actuated in part to serve the County.  If the seizure, like the sexual assault, was done exclusively for personal reasons, the action is not attributable to the County.  However, if the officers took Plaintiff's belongings as part of the illegal search and arrest in order to benefit the County, the actions could be attributable to the County.  Scope of employment is ordinarily a question of fact, and becomes a question of law only when "the facts are susceptible of but one reasonable conclusion . . . ."  Kang, 675 P.2d at 808.  The Court concludes that the facts are not susceptible to only one reasonable conclusion, and therefore denies both motions for summary judgment regarding the theft.

14

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and

DENIES IN PART both motions for summary judgment.

IT IS SO ORDERED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: August 30, 2012

TRACY MOTELEWSKI V. MAUI POLICE DEPARTMENT, ET AL.; CV. NO. 11-00778 BMK; ORDER
GRANTING IN PART AND DENYING IN PART PLAINTIFF'S AND DEFENDANT'S MOTIONS FOR
SUMMARY JUDGMENT